Charles A. Loreto, J.
This case was presented to the court for its decision on a record of stipulated facts.
*973 The parties, neighboring owners of private dwellings, seek injunctive relief against each other. Two actions were joined for trial. The complaint of Hele is practically embraced in his counterclaim to the Meyerson and Stukalin suit against him, which was discontinued without prejudice and without costs.
Each of these three parties owns one of 11 attached houses located on the north side of Pitman Avenue between Gunther and Wickham Avenues in the Borough of The Bronx, New York City. This row of houses, all of them alike, are located on plots of land approximately 17 feet wide and 100 feet deep. The houses are 30 feet deep, set back 20 feet from Pitman Avenue. They have a 50-foot rear area. When the houses were in the course of construction in the year 1947 the developer-owner executed a declaration of easement which was duly recorded. It recites a 20-foot easement running across the rear of the houses. However, he laid a 10-foot cement pathway and not one of 20 feet width across the rear of the structures. The topography of the rear of the 10-foot path strip indicates that the land sharply rises. To have made a 20-foot pathway would have required considerable excavation and extensive support of the remaining land to the rear.
The parties purchased and obtained title to their respective houses either upon the completion of the erection or shortly thereafter. Meyerson acquired the one on the northeast corner. Stukalin and Mele own the third and fourth houses respectively from that corner.
There is a considerable difference in the grade between Gunther Avenue and Wickham Avenue. Gunther Avenue is 14 feet above the ground level of the cement 10-foot pathway running across the rear of all of the houses. Therefore, there exists a physical impossibility of a passage through from Wickham Avenue into Gunther Avenue, and none exists from Gunther Avenue, permitting the use of the easement. The pertinent portion of the declaration of easement reads:
‘ ‘ whereas, for the further enhancement of the value of said premises and the convenience of the owners and occupants thereof, it is the desire and intention of said bronx housing corporation, by this instrument, to create certain easements aild rights of way in the manner hereinafter set forth, * * *
‘ ‘ And the said bronx housing corporation does hereby certify and declare that it does hereby create and establish the following covenants and restrictions with respect to the above described premises: # * *
“ G. No driveways for the purpose of ingress and egress of automobiles only, which may have been declared by the owner *974 herein for the benefit of certain portions of the above described premises, shall be used for any purpose other than the passing and repassing within such driveways so established between the premises of the respective owners and the entrance to such driveways; said driveways shall not be used for the parking of automobiles, trailers or other vehicles for any purpose and at any time whatsoever; and no automobile, trailer or other vehicle shall be parked or stored or be permitted to remain on any building plot in this subdivision temporarily or permanently unless same is parked or stored in a garage erected on said plot. It is expressly provided, however, that until such time as garages are erected on the space provided in the rear of each building plot, each owner of such building plot may park his car on the space provided for future erection of the garage. * * *
“ And the said bronx housing corporation, dobs hereby certify and declare that it does hereby create and establish a perpetual unobstructed right of way or easement with respect to parcel ‘ A ’ hereinabove described for the use in common by the present owners and occupants and future owners and occupants of the following described part or portion of the premises hereinbefore described as parcel ‘ A ’ in favor of and for the benefit of each of the said parcels, * # * (Identical statement for each parcel designated “ B ”, “ C ”).
“ The easements hereinabove described affecting the parcels A, B and 0 hereinabove described shall at all times be and remain open driveways for private automobiles only and such driveways shall be forever maintained for such purpose and shall be deemed to exclude the right to parh automobiles, trailers or any other type of private or commercial vehicles on said driveways for any reason and at any time whatsoever.” (Italics supplied.)
When, if at all, automobiles of any of these parties or other interested property owners used the easement as a passageway has not been indicated. Clearly it had not been used for such purpose by any of them when this cause arose; nor has there been any showing of such use since then. Nor has any evidence been offered to indicate a prospect of such use.
There is a garage structure in the rear of the Meyerson plot; the only such structure on any of the 11 plots. All of the houses have an apartment on street level and a three-room apartment below. The latter alone has an exit door to the rear.
Since 1954 Meyerson, for a monthly charge by other persons, has permitted the storage of their baby carriages and bicycles, but no automobiles, in his garage structure. In 1955 or 1956 he placed a gate in his fence bordering the Gunther Avenue side *975 which leads to the roof of this garage, and also erected a stairway down alongside of the garage to the easement level. This gate and stairway have afforded an easy passage to strangers, who have used it as a short cut from Gunther Avenue to Wick-ham Avenue, along the easement both across the rear of the Mele property as well as the other common property owners. This undoubtedly has annoyed Mele. To define his rear property lines, in 1960 he erected along its sidelines a wire fence with a free-swinging 10-foot-wide gate on each side for the 10-foot cemented easement pathway. This gate at all times has remained unlocked. It is these gates and that portion of the fence which embraces the 10-foot space which would come within the 20-foot easement, that the plaintiffs seek to have removed.
The court is of the opinion that the declaration of easement is a limited one. It permits the common use of the easement area as a passageway for automobiles only. For such purpose it has not been used and is not being used by any of the parties. Unless the improbable were to occur, which would require all 11 adjoining owners to enter into an agreement to excavate and remove the sloping area in the rear of their plots and erect a supporting wall for the remaining rear portion of their land, bearing and sharing the expense that this would entail, the use of the easement for the garaging of automobiles in the rear of their plots is virtually impossible.
In any event, in his erection of a fence and a free-swinging unlocked gate along the rear lines of his property, the court fails to discern any unreasonable interference by Mele with the easement right of the other parties, which would justify the granting of the injunctive relief sought (cf. Falco v. Minmer, 28 Mise 2d 300).
The easement here is clearly distinguishable from that in Missionary Society v. Evrotas (256 N. Y. 86, 89) which is “ unusually broad ’ ’ and by its language grants a right of way for the passage of vehicles and horses and 11 for all other purposes ” in common with the owner of other abutting lands. (Italics supplied.)
At bar, the developer-grantor who created the easement had it within his power to make it feasibly operative for the free passage and garaging of automobiles of the several abutting grantees. This he did not do. Viewing the situation realistically, it is highly improbable that the 11 property owners will, in the foreseeable future, by unity of purpose and action and the sharing of expense necessary to be incurred, make the easement feasible for its declared use.
*976 In Blydenburgh v. Ely (161 App. Div. 91, affd. 220 N. Y. 641) where the grant of right of way was broader than the one at bar, the trial court’s determination to permit unlocked gates was held to be “ reasonable and within its discretion ” and it was observed that “ The plaintiff’s right of passage must be enforced, but it must also be enforced in such a manner as will give him a reasonably full enjoyment of his right, and at the same time cause no undue burden upon the defendant in the beneficial use of his land ” (pp. 92-93) (italics supplied).
Applying this observation as the precept for the facts of this case, the decision of the court must be one denying the injunctive relief here sought.
Accordingly, the complaint of Meyerson and Stukalin should be dismissed.